FILED

Chan Y Tang and Pao C Tang
7542 Corona Valley Ave.
Corona, CA 92880
Phone: (626)636-0240

Plaintiff in Pro Per

2012 JAN 18 PM 3: 28

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY:_____

# UNITED SSTATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| CHAN Y TANG and PAO C TANG<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A., a business entity, form unknown; RECONTRUST COMPANY, a business entity, form unknown; and DOES 1 through 63 inclusive,<br><br>Defendants. | Case No.: 5:11-CV-02048 DOC (DTBx)<br><br>JUDGE: Hon. David O. Cater<br><br>**PLAINTIFF'S OPPOSITION TO NOTICE OF MOTION AND MOTION BY DEFENDANTS BANK OF AMERICA, N.A. AND RECONTRUST COMPANY, N.A. TO DIMISS PALINTIFFS' COMPLAINT**<br><br>**Date:** February 6, 2012<br>**Time:** 8:30 AM<br>**Courtroom: 9D** |

Plaintiffs Chan Y. Tang and Pao C. Tang respectfully the following Memorandum of Points and Authorities in opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint.

1

## TABLE OF CONTENTS

1. INTRODUCTION

2. STATEMENT OF FACTS

3. WRONGFUL FORECLOSURE - FRIST CAUSE OF ACTION

4. CAL CIVIL CODE §2923.5 - SECOND CAUSE OF ACTION

5. UNJUST ENRICHMENT – THIRD CAUSE OF ACTION

6. RESPA AND TILE VIOLATIONS - FOURTH CAUSE OF ACTION

7. FRAUD AND CONCEALMENT – FIFTH CAUSE OF ACTION

8. QUIET TITLE - SIXTH CAUSE OF ACTION

9. DECLARATORY/INJUNCITIVE RELIEF - SEVENTH CAUSE OF ACTION

10. SLANDER OF TITLE - EIGHTH CAUSE OF ACTION

11. INTENTIONAL EMOTIONAL DISTRESS - NINTH CAUSE OF ACTION

12. CONSLUSION

# **TABLE OF AUTHORITIES**

## **CASES**

Carpener  v. Longan, 83 U.S. 271, 274 (1872)..................................................................12

Eronini  v. J P Morgan Chase Bank, NA, No. 08-55929, 2010 WL 73781 (9th Cir Mar.3, 2010) ...16

Gompper  v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002)..........................................09

Hahn  v. Mirda, 147 Cal.App.4th 740, 745 (2007) ......................................................17

In re Foreclosure Case, 521 F. Supp.2d 650, 652 (S.D. Ohio, 2007) .................................13

In re Foreclosure Cases, 521 F.Supp.2d 650, 653 (S.D. Ohio, 2007) .................................12

In re Nosek, 2008 WL 1899845 (Bkrtcy.D.Mass., Apr. 25, 2008)......................................12

Kruse  v. Bank of America, 202 Cal.App. 3d 38, 67 (1988) ...........................................21

North Star Int'l  v. Arizona Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983) ......................09

Rabb  v. BNC Mortgage, Inc., 2009 WL 3045812, at *2 (C.D.Cal. Sep.21, 2009) .................20

Saxon Mortgage  v. Hillery, Case No. C-08-4357 (N.D. Cal. 2008)................................12

Sullivan  v. Wash. Mut. Bank, FA, 2009 WL 3458300, at *4-5 (N.D.Cal. Oct.23, 2009) .........20

Trerice  v. Bule Cross, 209 Cal. App. 3d 878 (1989) ...................................................21

Walleri  v. Fed. Home Loan Bank of Seattle, 83 F.d 1575, 1580 (9th Cir. 1996) ....................09

## **Statutes**

Federal Rule of Civil Procedire 12 (b) (6).................................................................09

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1.  INTRODUCTION

Defendants seek to dismiss Plaintiffs' Complaint claiming that their 9 cause of action are not supported by sufficient facts.  Bank of America and Recontrust assert, "the entire complaint consists of nothing but plausible claim for relief." Plausible claim for relief is text that can be reused in new contexts or applications without being changed much form the original.  It means standardized, commonplace, stereotyped, unvaried.  Perhaps when Defendants see so many lawsuits raising the same issues of fraud, lack of standing, forgery, perjury, etc., they all start to look alike.  Bank of America seeks to harvest millions of houses across America without producing any paper from its vaults that would support its claims.

Here are some of the facts from numbered paragraphs in Plaintiffs' Complaint that Bank of America characterizes as commonplace and unvaried:

8. Plaintiffs signed the mortgage documents on 12/1/2005 and did not received any documents from Bank of America, including disclosure required by the Truth in Lending Act ad Notice of Right to Cancel.

9. Bank of America securitized Plaintiffs' single-family residential mortgage loan into Mortgage Backing Security, evidence by Bank of America letter date 7/1/2011 (Plaintiff Exhibit B),  Plaintiffs are informed and believe that Bank of America has been paid in full.

11. Michael Link did not have personal knowledge of the matters described in his declaration, which purported to describe attempts by BAC Home loan to contact Plaintiffs as required by §2923.5.

12. Bank of America retained no beneficial interest in the loan that could allow T. Sevillano (robo-signer) executed a Substitution of Trustee appointed Recontrust (whole owned by Bank of America) become new trustee.  Servicer and Trustee are same party.

14. Lisa Allison (robo-singer) did not have personal knowledge of the matters described in her declaration, which purported to describe the requirement on §2923.54.

And the FACT goes on. The Congressional Oversight Panel released a report on November 16, 2010.  Plaintiffs request that the Court take Judicial Notice of the COP report. It casts this lawsuit and similar lawsuits in a different light than anything confronting the legal system in the past.

In the fall of 2010, reports began to surface alleging that companies servicing $6.4 trillion in American mortgages may have bypassed legally required steps to foreclose on a home.  Employees or contractors of Bank of America, GMAC Mortgage, and other major loan servicers testified that they signed, and in some cases backdated, thousands of documents claiming personal knowledge of facts about mortgages that they did not actually know to be true.

Allegations of "robo-signing" are deeply disturbing and have given rise to ongoing federal and state investigations.  At this point the ultimate implications remain unclear. It is possible, however, that "robo-singing" may have concealed much deeper problems in the mortgage market that could potentially threaten financial stability and undermine the government's efforts to mitigate the foreclosure crisis.

If documentation problems prove to be pervasive and, more importantly, throw into doubt the ownership of not only foreclosed properties but also pooled mortgage, the consequences could be severe.  Clear and uncontested property rights are the foundation of

the housing market.  If these rights fall into question, that foundation could collapse. Borrowers may be unable to determine whether they are sending their monthly payments to the right people (COR Report Nov.16, 2010, pp.4-5).

GMAC Mortgage, a subsidiary of current TRP recipient Ally Financial, announced on (9/24/2010 that it had identified irregularities in its foreclosure document procedures that raised questions about the validity of foreclosures on mortgages that it serviced. Similar revelations soon followed from Bank of America, a former TARP recipient, and others. Employees of these companies or their contractors have testified that they signed, and in some cases backdated, thousands of documents attesting to personal knowledge of facts about the mortgage and the property that they did not actually know to be true.

The panel emphasizes that mortgage lenders and securitization servicers should not undertake to foreclose on any homeowner unless they are able to do so in full compliance with applicable laws and their contractual agreements with the homeowner (COR Report, Nov.16, 2010, p.6).

If document irregularities prove to be pervasive and, more importantly, throw into question ownership of not only foreclosed properties but also pooled mortgages, the result could be significant harm to financial stability - the very stability that the TARP was designed to protect.  In the worst case scenario, a clear chain of title - an essential element of a functioning housing market - may be difficult to establish for properties subject to mortgage loans that were pooled and securitized. Rating agencies are already cautions in their outlook for the banking sector, and further blows could have a significant effect (COP Report, Nov.16, 2010, p.7)

If irregularities in the foreclosure process reflect deeper failures to document property changes of ownership as mortgage loans were securitized, then it is possible that Treasury is dealing with the wrong parties in the course of the Home Affordable Modification Program (HAMP). This could mean that borrowers either received or were denied modifications improperly.   Some servicers dealing with Treasury may have no legal right to initiate foreclosures, which may call into question their ability to grant modifications or to demand payments from homeowners, whether they are part of a foreclosure mitigation program or otherwise.  The servicers' tendency to cut corners may also have affected the determination to modify or foreclose upon individual loans.

Many of the entities implicated in the recent document irregularities, including Ally Financial, Bank of America, and JPMorgan Chase, are current or former TARP recipients (p.8).

Bank of America wants to take real property without offering any proof that might tend to show who holds a beneficial interest in the promissory note on the grounds that it is a big bank. It is no wonder that all those lawsuits are beginning to look so much alike.  Currently one on nine homeowner is seriously delinquent on their mortgage, and one in four homeowners owe more than the value of their property <1>. The American Dream is becoming a nightmare. Business-as-usual is a formula for collapse of our social and economic institutions.

The report of the Congressional Oversight Panel continues on page 25: If it is unclear who owns the mortgage, clear title to the property itself cannot be conveyed.  If, for example, the trust were to enforce the lien and foreclose on the property, a buyer could not be sure that the purchase of the foreclosed house was proper if the trust did not have the right to foreclose

on the house in the first place.  Similarly, if the house is sold, but it is unclear who owns the mortgage and the note and, thus, he debt is not properly discharged and the lien released, a subsequent buyer may find that there are other claimants to the property.  In this way, the consequences of foreclosure document action irregularities converge with the consequences of securitization irregularities: in either situation, a subsequent buyer or lender may have unclear rights in the property.

These irregularities may have significant bearing on many of the participants in the mortgage securitization process:

Sponsors, Servicers & trustees - Failure to follow representations and warranties found in PSAs can lead to the removal of servicers or trustees and trigger indemnification rights between the parties.  Failure to record mortgages can result in the trust losing its first-lien priority of the property.  Failure to transfer mortgages and notes properly to the trust can affect the holding of the trust.  If transfers were not done correctly in the first place and cannot be corrected, there is a profound implication for mortgage securitizations: it would mean that the improperly transferred loans are not trust assets and MBS are in fact not backed by some or all of the mortgages that are supposed to be backing them.  This would mean that the trusts would have litigation claims against the securitization sponsors for refunds of the value given by the trusts to the sponsors (or depositors) as part of the securitization transaction. If successful, in the most extreme scenario this would mean that MBS trusts (an thus MBS investors) could receive complete recoveries on all improperly transferred mortgages,

<1> responsiblending.org/mortgage-lending/research-analysis/snapshot-of-a-foreclosure-crisis.html

thereby shifting the losses to the securitization sponsors.  Borrowers/Homeowners may have several available causes of action.

They may seek to reclaim foreclosed properties that have been resold.  They may also refuse to pay the trustee or servicer on the grounds that these parties do not own or legitimately act on behalf of the owner of the mortgage or the note. In addition, they may defend themselves against foreclosure proceedings on the claim that robosigning irregularities deprived them of due process.

## 2.  STATEMENT OF FACTS

Discovery has not commenced.  Bank of America holds all the cards. They have vast resources and privileged access to millions of documents. Bank of America offer no proof that Plaintiffs' loan was still an asset on their book.  Plaintiffs allege that Bank of America did not have any interest in Plaintiffs' property because Bank of America was a servicer.  If Bank of America succeed, then the question for the court will be whether Bank of America role as a servicer transformed Plaintiffs' Property into an asset.  The material allegations in the Complaint are teeming with triable issues. Defendants' motion to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure 12 (b) (6) will not sufficiency.  North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). All material allegations in the complaint, "even if doubtful in fact," are assumed to be true.  The Court must assume the truth of all factual allegations and must 'construe them in a light most favorable to the nonmoving party." Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir 2002); Walleri v. Fed. Home Loan Bank of Seattle, 83 F.3d 1575, 1580 (9th Cir. 1996). The court must accept as true all reasonable inferences to be drawn from the material allegations in the complaint. Barker v. Riverside County Office of Education, 584 F.3d 821, 824 (9th Cir. 2009).  The

Complaint alleges facts in support of Plaintiff's contention that Bank of America can not prove it is authorized to foreclose their home.

### 3.   WRONGFUL FORECLOSURE - FIRST CAUSE OF ACTION

Bank of America has not attempted to prove to this Court that it acquired any interest in Plaintiffs residence. Only Bank of America knows whether plaintiffs' loan still on the book as an asset.  If is was not, then Bank of America did not have any beneficial interest in Plaintiffs' loan.  Bank of America sold its beneficial interest in Plaintiffs' property and receiving no less than the balance on Plaintiffs' note when securitized into MBS trust, and retained merely a duty to service the loan.  Since Bank of America has no beneficial interest in Plaintiffs' loan and has no right to foreclose their property unless it can prove that the beneficiary is getting its share of the proceeds.  A servicer is not a black hole.  There was a time, not long ago, when servicers were trusted.  Time have changed. People no longer trust the institutions they once revered.  Stated in the Congressional Oversight Panel's report at page 14:

Effective transfers of real estate depend on parties being able to answer seemingly straightforward questions: who owns the property? How did they come to own it? Can anyone make a competing claim to it? The irregularities have the potential to make these seemingly simple questions complex. As a threshold matter, a party seeking to enforce the rights associated with the mortgage must have standing in court, meaning that a party much have any interest in the property sufficient that a court will hear their claim and can provide them with relief.  See Stephen R. Buchenroth and Gretchen D Jeffries, Recent foreclosure Cases: lenders beware (June 2007; Wells Fargo v. Jordan, 914 N.E. 2d 204 (Ohio 2009) ("If plaintiffs have offer no evidence that it owned the note and mortgage when the complaint was

filed, it would not be entitled to judgment as a matter of law."); Christopher Lewis Peterson, Foreclosure, Subprime Mortgage Lending, and the Mortgage electronic Registration system, University of Cincinnati Law Review, Vol. 78, No. 4, at 1368-1371 (summer 2010); MERSCOPR, Inc. v. Romaine, 861 N.E. 2d 81 (N.Y. 2006) (URL's redacted per local rule). Accordingly, a second set of problems relates to the chain of title on mortgages and the ability of the foreclosing party to prove that it has legal standing to foreclosed. While the problems not limited to the securitization market, they are especially acute for securitized loans because there are more complex chain of title issues involved.

Under the terms of Plaintiffs' Deed of Trust, Section 24, Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder..." The Substitute Trustee was subscribed by T. Serillano as assistant Secretary of Bank of America, and acknowledge by Michelle I Miller, They are robo-singer and robo-notary their name and signatures are probably forgery have attested to the truth of facts recited in declarations and affidavits in hundreds of thousand of foreclosure. Plaintiffs have obtained copies of documents showing different signatures with their name T. Serillano and Michelle Miller (Plaintiff Exhibit H). Clean title can not come form "dirty hand" (robo-signer), a servicer did not have the authority to executed this document. The Recontrust never been grant the authorization become Trustee to conduct the foreclosure.

Plaintiffs allege that Bank of America does not have standing to sell Plaintiffs' property because Bank of America is not the holder of the Note and Bank of America does not own the loan and do not want to identify the owner of the loan. Bank of America has no beneficial interest in the note and can only proceed if it is the servicer and joins the owner of the note in

this action.  To dismiss the lawsuit before ascertaining the truth of these allegations would unjust.  Bank of America could produce the evidence in this files, but it prefers that Plaintiff be denied their day in court.

In Saxon Mortgage v. Hillery, case No. C-08-4357 (N.D. Cal. 2008), the court ruled that the foreclosing party, Consumer, must demonstrate that it is the holder of the deed of trust and the promissory note.  The Saxon court cited In re Foreclosure Cases, 521 F.Supp.2d 650, 653 (S.D. Ohio, 2007), which held that to show standing in a foreclosure action, the plaintiff must show that it is the holder of the note and the mortgage at the time of the complaint was filed.

For a valid transfer beneficiary' right, there must be more than just assignment of the deed alone; the note must also be assigned. "The note and mortgage are inseparable; the former as essential, the latter as an incident. "Carpenter v. Longan, 83 U.S. 271,274 (1872).  Bank of America did not repurchase the note back and there is no assignment of deed of trust to proof Bank of America become beneficiary.

In In Re Nosek, 2008 WL 1899845 (Bkrtcy.D.Mass. 2008), the court awarded Rule 9011 sanctions against a lender for falsely representing that it was holder of the note and mortgage, when the lender had sold the note and mortgage five days after closing.

In re Foreclosure Cases involved 27 foreclosure actions filed in the Southern District of Ohio, in which the court questioned whether the plaintiff lenders has standing when the foreclosure complaint was filed and whether the court had subject matter jurisdiction to hear the cases at the time the foreclosure complaint was filed. Judge Thomas M. Rose wrote, [This Court] "will not tolerate a lender's or servicer's disregard for the rules that govern litigation, including contested matters, in the federal courts. It is the creditor's responsibility to keep a

borrower and the Court informed as to who owns the note and mortgage and is servicing the loan, not the borrower's or the Court's responsibility to ferret out the truth. "In re Foreclosure Cases, 521 F.Supp.2d 50,652 (S.D. Ohio, 2007).

If Bank of America transferred it beneficial interest in Plaintiffs' loan to a trust, Bank of America cannot foreclose against Plaintiffs without joining the Real Party in Interest and showing that it is acting with that party's knowledge and blessing.

### 4.  CAL CIVIL CODE §2923.5 – SECOND CAUSE OF ACTION

Defendants cite Mabry v. Aurora Loan Services, 185 Cal.App.4th 208 (2010) in support of the proposition that the NOD satisfies the requirements of Cal. Civil Code §2923.5 since it recites the form language of the statute, regardless of whether or not it includes a declaration under penalty of perjury.  However, this misses the point of the statute. §2923.5 requires contact with the borrower, not form language stapled to a form.  If the party sending the Notice does not attach a declaration under penalty of perjury, the NOD has no evidentiary value in proving compliance with the notice requirements.

The court of Appeal ruled in Mabry that a borrower has a private right of action under § 2923.5 and is not required to tender the full amount of the mortgage as a prerequisite to filing suit, since that would defeat the purpose of the statute.   Under the count's narrow construction of the statute, §2923.5 merely adds a procedural step n the foreclosure process. Since the statute is not substantive, it is not premised by federal law.  The declaration specified in §2923.5 does not have to be signed under penalty of perjury, and if the notice is defective, the borrower's remedy is limited to getting a postponement of a foreclosure wile the lender files a new notice of default that complies with §2923.5.

13

On remand from the Court of Appeal, the Mabry trail court found on November 23, 2010, that the Notice of default did contact the borrower, tried with due diligence to contact the borrower, etc. However, the declaration on the Notice of Default was not signed under penalty of perjury, and therefore it had no evidentiary value in proving whether or not the defendants satisfied the notice requirements of section §2923.5. After considering declarations of the parties in an evidentiary hearing, the court found that defendant did not make the necessary contacts as required by §2923.5 and granted Mabry's application for a preliminary injunction to stay foreclosure proceedings until the defendant complied with the requirements of Civil Code § 2923.5. As a decision of the California Superior Court, the Mabry ruling may not be precedent, but the court's logic is persuasive.  Defendants cannot satisfy the requirements of §2923.5 by stamping the statutory language on the Notice of Default. They must prove that they made the necessary contacts required by the statute, and an unsigned or unsworn declaration has no evidentiary value.  Therefore, to show compliance with the notice requirements of the statute, and evidentiary hearing is necessary.

## 5.  UNJUST ENRICHMENT – THIRD CAUSE OF ACTION

Defendants argue that Plaintiffs' pleads no facts indicating that Bank of America mere receipt of payments from Plaintiffs on the Subject Loan is somehow unjust . The FACT alleges:

After Bank of America originated the loan, it transferred all beneficial interest in the loan. Neither Bank of America, Recontrust, MERS nor anyone else has recorded a transfer of a beneficial interest in the Note or any other interest in the Property back to Bank of America.

Bank of America does not have standing to enforce the Note because Bank of America is not the owner of the Note, Bank of America is not a holder of the Note, and Bank of

America is not a beneficiary under the Note.  Only a noteholder or beneficiary under the DOT has the capacity to exercise a power of sale.  Bank of America does not claim to be a holder of the note of a beneficiary.  Bank of America merely describes itself as a servicer in the Notice of Trustee's Sale.  Bank of America has no interest in Plaintiffs' mortgage.

It is not the receipt of payments that makes the payments unjust, but rater the lack of entitlement to the payments coupled with the repeated written, published and recorded threat of foreclosure and eviction.

Bank of America may or may not have a servicing interest, depending on facts under Bank of America's control.  If Bank of America can show that it obtained "Servicing interest" in Plaintiffs' loan, then perhaps Bank of America can also show whether it actually forwarded payments over $100,000.00 from plaintiff to the beneficial owner of the loan.  If Bank of America kept the money, it has been unjustly enriched at plaintiffs' expense.  In what republic could any bank, regardless of size, presume the right to take money without naming the beneficiary or accounting for it disbursement, then seize a private house when the homeowner asks where the payments are going?

## 6.   RESPA AND TILA VIOLATIONS – FOURTH CAUSE OF ACTION

No one should be compelled to pay money to a party to whom the money in not owed. During the past year Plaintiffs have requested documents from Bank of America, both in correspondence and through a Qualified Written Requested under RESPA sent on April 30 2010 (Plaintiff Exhibit J). Bank of America has refused to produce any relevant material. Plaintiffs cannot ascertain the facts to prove their case if Bank of America refuses to respond with information in its possession.  This is not an isolated incident.  Bank of America and other big banks are systematically blocking efforts of borrowers to obtain information as part

of a cover-up.  They are ignoring virtually everyone's QWR and seeking the blessing of the courts to shield them form disclosure under RESPA and during discovery.

Bank of America asserts that Plaintiffs have not been harmed by its statutory violations. Bank of America and other big banks are automatically blocking efforts of borrowers to obtain information as part of cover-up. They are ignoring virtually everyone's QWR and seeking the blessing of the courts to shield them from disclosure under RESPA and during discovery.

Bank of America asserts the Plaintiffs have not been harmed by its statutory violations. Bank of America cites Eronini v. JP Morgan Chase Bank, NA, No. 08-55929, 2010 WL 737841 (9th Cir Mar.3, 2010) in support of its assertion that Plaintiffs must allege damages to support of a RESPA claim. The 9th Circuit Court settled in Eronini, "This disposition is not appropriate for publication and is not precedent."

Bank of America assertion that damages must be asserted to state a cause of action for violation of a statutory requirement to furnish information, where the bank has refused to provide information requested in a Qualified Written Request, is like insisting that a party pursuing discovery specify its damages when seeking a discovery order after interrogatories have been ignored.  Such a rule would invite mayhem. How does a party with dramatically inferior access to information prove damages when a party with over $2 Trillion dollars in assets and thousands of lawyers under contract ignores a QWR and refuses to respond to discovery?

Paragraph 35 of the Plaintiffs Complaint alleges damages. "As a direct and proximate result of Defendants' failure to comply with RESPA, Plaintiffs have suffered and continue to suffer actual damages in that they are unable to ascertain the basis for Defendants' claims to their

property, they cannot identify the owner of the beneficiary of the Note, they cannot determine whether their payments to Bank of America in excess over $100,000.00 were converted by Bank of America or paid to the beneficiary, and they have no evidence upon which to conclude the Defendants are acting in good faith with lawful authority in their attempts to foreclosed the Property."

Defendants still argue that Bank of America should not have any liability under TILA for Bank of America actions?

## 7.   FRAUD AND CONCEALMENT – FIFTH CAUSE OF ACTION

Bank of America quotes Hahn v. Mirda, 147 Cal.App.4th 740, 745 (2007). "To state a cause of action for fraudulent concealment, the defendant must have been under a duty to disclose some fact to the plaintiff. "let's start with fraudulent robo-signing documents were filed against Plaintiffs' property. Defendants' argument continues, "Plaintiffs have fails to allege that Bank of America's conduct exceeded a typical money lender and thus fail to state a claim." So everybody was doing it. Plaintiffs can only hope and pray that Bank of America and Recontrust make this argument in front of the jury.

## 8.   QUIET TITLE- SIX CAUSE OF ACTION

Defendant s argue that tender of the full amount of the debt is necessary, citing Nool, Pagtalunan, Miller, and Caravantes. However, if Bank of America no enforceable claim to the Property, and connot produce any evidence that it acquired or possesses any rights to the property, then full tender would be an absured requirement to stop their frivolous claim.

Anyone could maliciously file a Notice of Trustee's Sale and evict a homeowner. If a lack of resources to tender the outstanding balance on the loan prevented the homeowner

form having their day in court, how would that end to prove that the crook had a legitimate claim? Mabry is correct that a requirement of tender defeats the purpose of the statute.

The core issue in this case is to ascertain who is the mortgagee. This issue cannot be brushed aside on the pretense that California is a non-judicial state. Non-judicial dose not mean outlaw. If Bank of America is not the mortgagee, it would be unjust to dismiss the complaint and allow Bank of America to seize Plaintiffs' home. Plaintiffs acknowledge that they received the funds. They are ready, willing and able to resume any reasonable monthly payments to the owner of the note. Is Bank of America legally entitled to repayment of these funds from Plaintiffs? Bank of America must produce the original promissory note and show that Bank of America is the beneficiary of the note, or that it is working on behalf of the beneficiary with the beneficiary's blessing. Plaintiffs are informed and believe that Bank of America cannot produce the necessary instruments. They will show at trial that the promissory note was bundled into a presold "Trust" which was then securitized and offered for investment many times over. In other words, the note was "atomized" and no longer exist as an enforceable mortgage document.

Defendants quote Nool v. Homeq Serving, "The cloud upon his title persists until the debt is paid." But the question is, paid to whom? Plaintiffs did not borrower money from Bank of America. If Plaintiffs could identity the owner of the note, they would pay the mortgagee until the debt was paid and then the Deed of Trust would be reconveyed to them.

They request that their title be quieted because the purported debt has been spread over a multitude of unidentifiable investors unknowingly involved in their mortgage during that chaotic decade when the system was broken by the banks.

Multiple banks may attempt to foreclose upon the same property. Borrowers who have already suffered foreclosure may seek to regain title to their homes and force any new owners to move out. Would-be buyers and seller could find themselves in limbo, unable to know with any certainty whether they can safely buy or sell a home.  If such problem were to arise on a large scale, the housing market could experience even great disruptions than have already occurred, resulting in significant harm to major financial institutions. For example, if a Wall Street bank were to discover that, due to shoddily executed paperwork, it still owns millions of defaulted mortgages that it thought it sold off years ago, it could face billions of dollars in unexpected losses. (COP Report, Nov.16, 2010, pp.4-5)

## 9.  DECLARATORY/INJUNCTIVE RELIEF – SEVEN CAUSE OF ACTION

Plaintiffs' home was been scheduled by Defendant Recontrust to be sold on 12/29/2010.  There is clearly a significant and grueling controversy brewing between the parties and a pressing need for a judicial determination of the parties' rights and duties concerning the validity of the Promissory Note and Deed of Trust and Defendants' rights to proceed with a sale of the Property.

Documentation irregularities could also have major effects on Treasury's main foreclosure prevention effort, the Home Affordable Modification Program.  Some servicers dealing with Treasury may have no legal right to initiate foreclosures, which may call into question their ability to grant modifications or to demand payments form homeowners.  The servicers' use of  "robo-signing" may also have affected determinations about individual loans; servicers may have been more willing to foreclose if they were not bearing the full costs of a properly executed foreclosure.  Treasury has so far not provided reports of any

investigation as to whether documentation problems could undermine HAMP. It should engage in active efforts to monitor the impact of foreclosure irregularities, and it should report its findings to Congress and the public.

The housing market and the broader economy remain troubled and thus vulnerable to future shocks. In short, even as the government's response to the financial crisis is drawing to a close, severe threats remain that have the potential to damage financial stability (COP Report, Nov.16, 2010, pp. 5-6).

Plaintiffs request a Temporary Restraining Order and Preliminary Injunction restraining defendants from conducting a Trustee's Sale of the Property during the pendency of this action.

## 10. SLANDER OF TITLE – EIGHTH CAUSE OF ACTION

Defendants make a closing argument when they state that a disparaging remark must cause damages to be actionable.  Causation is not an element that can be proven before the Court in a motion to dismiss.  Plaintiffs have adequately pled that they suffered an injury as a direct result of Defendants' actions. Defendants have cratered the market value of Plaintiffs' Property and caused their extreme emotional distress. To say there is no damage as a result of Defendants' public humiliation of Plaintiffs are calloused. See Sullivan v. Wash. Mut. Bank, Fa, 2009 WL 3458300, at *4-5 (N.D.Cal. Oct.23, 2009) (concluding that the initiation of foreclosure proceedings put the plaintiffs' interest in their property sufficiently in jeopardy to allege an injury under 17200); Rabb v. BNC Mortgage, Inc., 2009 WL 3045812, at *2 (C.D,Cal.Sept.21, 2009) (same). To assert that defamatory, damaging publications are protected by a privilege justifying dismissal of Plaintiffs' claim at the pleading stage is untenable. No one can record a groundless Notice of Default and publish a Notice of

Trustee's Sale against an unsuspecting neighbor and then hide behind a privilege under California law - not even Bank of America. Plaintiffs can prove that their drop in property value was proximately caused by the NOD and NOTS.

## 11. INTENTIONAL EMOTIONAL DISTRESS –NINTH CAUSE OF ACTION

"The pursuit of economic interests does not qualify as 'outrageous' conduct," argue Defendants, citing Trerice v. Blue Cross, 209 Cal.App.3d 878 (1989).

Times have changed since 1989, It would be difficult to find three people on the street who would not agree that the mortgage meltdown of the past decade was outrageous. Defendants' conduct as alleged in the Plaintiffs' Complaint was so outrageous that it exceeded all bounds tolerated in a civilized society.  Forged documents, systemic perjury, underwriting fraud, selling worthless junk to unsuspecting retirement funds in order to make a buck. Criminal.

Defendants conclude by citing Kruse v. Bank of America, 20 Cal.App.3d 38, 67 (1988), which states there is no claim for intentional infliction of emotional distress where lender simply attempted to collect a debt due under a security interest.  Depends on who's the lender, and that is why this motion to dismiss must be denied.

**Public Faith in Due Process Could Suffer**. If the public gains the impression that the government is providing concessions to large banks in order to ensure the smooth processing of foreclosures, the people's fundamental faith in due process could suffer (COP Report Nov. 16, 2010 p. 84).<2>

## 12. CONCLUSION

For the foregoing reasons, Plaintiffs Chan Y. Tang & Pao C. Tang respectfully request that the Court deny Defendants' Motion to Dismiss in its entirety.   If any claims are insufficiently plead, Plaintiffs request leave to amend.

Date: January   18   , 2012

Chan Y. Tang

Pao. C. Tang

---

<2> About the Congressional Oversight Panel.

In response to the escalating financial crisis, On 10/3/2008, Congress provided Treasury with the authority to spend $700 billion to stabilize the US economy, preserve home ownership, and promote economic growth. Congress created the Office of Financial Stability (OFS) within Treasury to implement to TARP. At the same time, Congress created the Congressional Oversight Panel to "review the current state of financial markets and the regulatory system. "The panel is empowered to hold hearings, review official data, and write reports on actions taken by Treasury and financial institutions and their effect on the economy (COP Report, Nov.16, 2010, p. 124)

Chan Y Tang and Pao C Tang
7542 Corona Valley Ave.  Corona, CA 92880
Phone: (626)636-0240

Plaintiff in Pro Per

UNITED SSTATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

CHAN Y TANG and PAO C TANG

                    Plaintiffs,

   v.

BANK OF AMERICA, N.A., a business entity, form unknown; RECONTRUST COMPANY, a business entity, form unknown; and DOES 1 through 63 inclusive,

                    Defendants.

Case No.:  5:11-CV-02048 DOC (DTBx)

**PROOF OF SERVICE BY MAIL**

I declare that I am over the age of 18 years, employed in the County of Los Angeles, State of California, and not a party to the above-entitled action.

On January 18, 2012, I served a true copy of the foregoing document described as **Plaintiff's Opposition to Notice of Motion and Motion by Defendants Bank of America, N.A. and Reconturst Company, N.A, to Dismiss Plaintiff's Complaint** by placing it in a sealed Priority Mail envelope and depositing it in the U.S. Postal Office postage prepaid address to the following:

**Roya N. Graziano**

**Bryan Cave LLP**

**3161 Michelson Drive suite 1500  Irvine, CA 92612-4414**

Place of Mailing: Temple City, CA.  Executed on:  January 18, 2012  in Temple City, CA.

**I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.**

_P Chen_

Peter Chen

1