UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

CIVIL MINUTES - GENERAL

Case No. SACV 11-2048 DOC (DTBx)          Date: March 19, 2012

Title: CHAN & PAO TANG v. BANK OF AMERICA, N.A. & RECONTRUST CO.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT          NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

      Before the Court is Defendants Bank of America, N.A. and Recontrust Co.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). ("Mot.") (Dkt. 7). The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. The Court has considered the moving, opposing, and replying papers, and hereby GRANTS in part and DENIES in part Defendants' Motion to Dismiss.

    **I.**     **BACKGROUND**

      At the outset it is important to properly characterize *pro se* Plaintiffs Chan and Pao Tang's (the "Tangs") Complaint. It is a difficult document to read, filled with grammatical errors that make comprehension a challenge, and it is suffused with palpable anger at what Plaintiffs seem to feel is a substantial injustice. This Court has a duty to interpret *pro se* pleadings liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980), *Bernhardt v. Los Angeles Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003). As such, taken as true and in the light most favorable to Plaintiffs, the facts alleged by the Tangs are as follows:

      In December 2005, Plaintiffs refinanced their home in Corona, CA with a loan from Bank of America, N.A. ("BOA"); they borrowed $385,000. Compl. Ex. A ("Deed of Trust"), Notice of

Removal Ex. A.[1]  This loan was secured by a Deed of Trust encumbering the property.  *Id.*  On the Deed of Trust the Tangs were identified as the borrowers and trustors, BOA was identified as the lender and beneficiary, and PRLAP, Inc. was identified as the trustee.  *Id.*

On August 26, 2010, two documents crucial to the present proceedings were executed.  The first was a Notice of Default and Election to Sell.  It stated that the Tangs had fallen behind on their payments beginning in October of the previous year and now had arrears of $25,102.04.  Compl. Ex. C ("Notice of Default").  The Notice of Default instructed the Tangs to contact BOA for information regarding the amount owed and payment options.  *Id.*  The Notice of Default was signed on August 26 by Betty Jo Livingston of Recontrust Co. ("Recontrust") "as agent for the Beneficiary."  *Id.*  The Notice of Default was recorded in the County of Riverside on August 30, 2010.  *Id.*  Attached to the Notice of Default was a "California Declaration" signed by Michael D. Link as an agent for BAC Home Loans Servicing, LP, a subsidiary of BOA, ("BAC") on August 6, 2010.  Compl. Ex. D ("California Declaration"); Compl. ¶ 11.  The California Declaration is a one-page document with six blank boxes to check next to various lines of text indicating particular circumstances.  *Id.*  By checking one such box, Link declared under penalty of perjury that BOA had "tried with due diligence to contact [the Tangs] in accordance with California Civil Code Section 2923.5."  *Id.*

The second important document executed on August 26, 2010, was a Substitution of Trustee.  Compl. Ex. E ("Substitution of Trustee").  In the Substitution of Trustee, BOA (acting as beneficiary under the Deed of Trust) substituted in Recontrust as the new trustee in place of PRLAP, Inc.  *Id.*  The Substitution of Trustee was signed on August 26, 2010, by T. Sevillano for BOA, acting as "Assistant Secretary."  *Id.*  The Substitution of Trustee was then notarized by Michelle Miller on September 3, 2010, declaring under penalty of perjury that T. Sevillano had personally appeared and proven that he/she had executed the Substitution of Trustee in his/her authorized capacity.  *Id.*  The Substitution of Trustee was eventually recorded in the County of Riverside on September 9, 2010 – ten days *after* the contemporaneously executed Notice of Default had been recorded.  *Id.*

A Notice of Trustee's Sale was then executed on December 2, 2010 by Sunita Narayanah

---

[1]Plaintiffs have submitted a number of exhibits in conjunction with their lawsuit; several of these documents (such as the Deed of Trust and Notice of Default, among others) are the same as ones submitted by Defendants in their Request for Judicial Notice.  *See* Defendants' Request for Judicial Notice (Dkt. 8).  Material properly submitted with a complaint can be considered as part of the complaint for a motion to dismiss.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  The Court may disregard allegations in the body of the complaint that are contradicted by reference to documents attached to the complaint as exhibits.  *See Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).  As such, the Court refers to the exhibits Plaintiffs properly attached to their complaint in support of their allegations.

acting as a "Team Member" for Recontrust. Compl. Ex. F ("Notice of Trustee's Sale"). The Notice of Trustee's Sale was recorded on December 6, 2010 in the County of Riverside; it set a foreclosure sale date for December 29, 2010.[2] *Id.* Attached to the Notice of Trustee's Sale was a "Declaration of Exemption Pursuant to Cal. Civ. Code 2923.54." Compl. Ex. G ("2923.54 Exemption"). This Exemption was signed under penalty of perjury by Lisa Allinson as "Vice President" of BAC on July 12, 2010, stating that BAC had obtained a final order of exemption from the California Commissioner of Corporations pursuant to Section 2923.53, and that the timeframe for giving the Notice of Sale specified in Section 2923.52(a) did not apply.[3] *Id.*

On December 3, 2010 – the day after the Notice of Trustee's Sale was executed – Sunita Narayanan[4] prepared another set of documents labeled "Affidavit of Mailing for Substitution of Trustee by Code;" these documents seem designed to comply with the notice requirements contained in Section 2934a, discussed below.[5] Compl. Ex. L ("Notice of Substitution of Trustee"). The cover page is a letter drafted by Sunita as a "Trustee Sale Officer" stating under penalty of perjury that she caused a copy of the Substitution of Trustee to be mailed to the Tangs on December 3, 2012. *Id.* There are at least two serious problems with this "Notice of Substitution of Trustee." First, the affidavit is unsigned. *Id.* Second, the copy of the Substitution of Trustee attached to the document is not a copy of the Substitution of Trustee that was earlier recorded on September 9, 2010. *Compare* Compl. Ex. E ("Substitution of Trustee") *with* Compl. Ex. L ("Notice of Substitution of Trustee"). The Substitution of Trustee attached to the Notice of Substitution of Trustee is unsigned, not notarized, does not mention T. Sevillano or any other agent acting on behalf of BOA, and indicates a different notary public (Darlene R. Gomez, as opposed to Michelle Miller). Compl. Ex. L.

The Tangs submit several other documents in support of their allegations. They submit a letter they received in July 2011 that shows Plaintiffs' mortgage had been securitized and sold by BOA. Compl. Ex. B. That same letter also acknowledges the parent/subsidiary relationship between BOA and BAC, that BOA does not own the Tang's promissory note and is acting as the Tang's loan servicer,

---

[2] Neither Plaintiffs' Complaint nor Defendants' Motion to Dismiss represent that a foreclosure sale of Plaintiffs' home has yet taken place.

[3] Unless otherwise specified, all statutory references in this Order are to the California Civil Code.

[4] Sunita's last name appears differently on the Notice of Trustee's Sale: Naranyanah, as opposed to Naranyanan, here on the affidavit attached to the Notice of Substitution of Trustee.

[5] Indeed, the alleged copy of the Substitution of Trustee attached to the Notice of Substitution of Trustee reads in the upper right-hand corner: "This Document is being sent to you in accordance with . . . Section 2934. The original of this document has concurrently been sent for recording with the County Recorder." Compl. Ex. L.

and that effective July 1, 2011, BAC would merge with BOA. *Id.* The Tangs also submit a Qualified Written Request ("QWR") they sent BOA on August 19, 2011 as well as Recontrust's response to the QWR, dated September 16, 2011. Compl. Ex. J ("QWR"); Compl. Ex. K. ("QWR Response").

Finally, the Tangs submit several documents in support of their allegations that T. Sevillano, Michelle Miller, and Lisa Allinson are "robo-signers" who sign documents without personal knowledge of the contents attested to therein and/or sign documents without the requisite authority to do so. Compl. Ex. H ("Sevillano & Miller Robo-Signing Documents"); Compl. Ex. I ("Allinson Robo-Signing Documents"). The documents submitted by the Tangs show Sevillano acting as "Assistant Secretary" of Mortgage Electronic Registration Systems, Inc. ("MERS") in March 2010 and Allinson acting as "Vice President" of MERS in March and May 2008. Compl. Ex. H & I.

The thrust of Plaintiffs' Complaint is that BOA and Recontrust do not have the authority to foreclose on Plaintiffs' home because Defendants do not own the note, have not followed proper foreclosure procedures, have not complied with certain statutory mandates, and use robo-signers. *See, e.g.,* Compl. ¶¶ 16-21, 26-28, 33-34, 37, 40, 45, 49, 61. Based on this alleged conduct, the Tangs bring nine causes of action: (1) wrongful foreclosure; (2) violation of Section 2923.5; (3) unjust enrichment; (4) Real Estate Settlement Procedures ("RESPA") and Truth In Lending Act ("TILA") violations; (5) fraud and concealment; (6) quiet title; (7) declaratory and injunctive relief; (8) slander to title; and (9) intentional infliction of emotional distress. *Id.* at 1.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)). In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id.* Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950. Determining whether a complaint states a plausible claim for relief will be a context-specific task requiring the court to draw on its judicial experience and common sense. *Id.*

In general, a court cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b). A court may, however, consider items of which it can take judicial notice without converting the motion to dismiss to one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of

the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Additionally, a court may take judicial notice of "'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Under the incorporation by reference doctrine, courts may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (alteration in original). Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

As noted above, this Court has a duty to interpret *pro se* pleadings liberally. As such, for the purposes of a Rule 12(b)(6) motion to dismiss, the allegations made in *pro se* complaints are held to a less stringent standard than those made in formal pleadings drafted by professional attorneys. *See Hughes*, 449 U.S. at 9 (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

### III. DISCUSSION

#### A. APPLICATION OF THE TENDER RULE WHEN A FORECLOSURE SALE IS PENDING

As an initial matter, Defendants seek to dismiss the majority of Plaintiffs' claims because Plaintiffs have not alleged a credible and unconditional offer of tender to satisfy the entirety of their outstanding debt. Mot. at 2. In California, the so-called "tender rule" is a prerequisite to any action seeking to set aside a foreclosure sale. *See U.S. Cold Storage v. Great W. Sav. & Loan Ass'n*, 165 Cal. App. 3d 1214, 1222 (1985). There has been some dispute as to whether the tender rule applies in situations where the foreclosure sale has not yet occurred. *See Rodriguez v. Bank of America*, No. C 11-3839-PSG, 2011 WL 5864108, at *3 (N.D. Cal. Nov. 22, 2011) ("There is some division in the district courts, however, as to whether the 'tender rule' precludes a claimant from seeking to prevent a pending nonjudicial foreclosure, as opposed to attempting to 'unwind' a foreclosure that has taken place."). Many courts have applied the tender rule in situations where a sale is pending. *See, e.g., Alcaraz v. Wachovia Mortg., FSB*, 592 F. Supp. 2d 1296, 1304 (E.D. Cal. 2009); *Alicea v. GE Money Bank*, No. C 09-00091 SBA, 2009 WL 2136969 (N.D. Cal. July 16, 2009). Others have chosen not to apply the tender rule in those situations. *See, e.g., Hague v. Wells Fargo Bank, N.A.*, No. C11-02366 TEH, 2011 WL 6055759, at *5 (N.D. Cal. Dec. 6, 2011) ("Tender is not required in this case, as the foreclosure at issue has not yet occurred.").

Some courts – and Defendants in the present action – rely on *Alicea* for the proposition that the tender rule applies in situations where the foreclosure sale is pending. *Alicea*, 2009 WL 2136969, at *3. Defendants rely on language from *Alicea* that reads, "When a debtor is in default of a

home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for wrongful foreclosure." *Id.*  Courts have also used this exact language for the proposition that the tender rule applies in cases where a foreclosure sale is pending.  *See*, *e.g.*, *Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1034 (N.D. Cal. 2010); *Stickler v. Wash. Mut. Bank. F.A.*, No. CV 11-02891 DDP (OPx), 2011 WL 4479200, at *2 (C.D. Cal. Sept. 27, 2011).  This Court, however, is troubled by the broad assertion made by the *Alicea* court.  First, the *Alicea* decision cites only two cases in its discussion of the tender rule: *Karlsen v. Am. Sav. & Loan Ass'n*, 15 Cal. App. 3d 112, 121 (1971), and *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal. App. 3d 1018, 1021 (1989).  Both *Karlsen* and *FPCI RE-HAB*, however, only applied the tender rule to a post-sale situation, not a pending foreclosure.  *See Karlsen*, 15 Cal. App. 3d at 121; *FPCI RE-HAB 01*, 207 Cal. App. 3d at 1020.  Finally, as noted by the courts in *Silva-Pearson v. BAC Home Loans Servicing, LP*, No. C 11-01491 SI, 2011 WL 2633406, at *2 (N.D. Cal. July 5, 2011), and *Howl v. Bank of America, N.A.*, No. C 11-0887 CW, 2011 WL 3610745, at *2 (N.D. Cal. Aug. 17, 2011), the facts in *Alicea* did not involve a situation where the sale was still pending; in *Alicea* itself the foreclosure sale had already occurred.  *See Silva-Pearson*, 2011 WL 2633406, at *2 n.1; *Howl*, 2011 WL 3610745, at *2.  Thus, this Court declines to follow *Alicea*'s broad assertion; it was dicta and not grounded in any prior case law involving pending foreclosures.

This Court finds more persuasive the line of decisions in which courts have refused to extend the tender rule to cases where the foreclosure sale has not yet occurred.  *See Silva-Pearson*, 2011 WL 2633406, at *2; *Howl*, 2011 WL 3610745, at *2; *Dubin v. BAC Home Loans Servicing*, No. C-10-05065 EDL, 2011 WL 794995, at *3 (N.D. Cal. Mar. 1, 2011); *Hague*, 2011 WL 6055759, at *5. In *Howl*, for example, the foreclosure sale had not yet occurred and the plaintiff, in addition to alleging fraud, multitudinous statutory violations, and wrongful foreclosure, sought rescission.  *Howl*, 2011 WL 3610745, at *1.  The defendants sought to dismiss the plaintiff's complaint because he did not offer tender.  *Id.* at *2.  The *Howl* court refused to apply the tender rule because the foreclosure sale was pending, and the defendants had cited no authority justifying such an application.  *Id.*  As discussed above, the court found the defendants' reliance on *Alicea* particularly misplaced because that case involved a situation where the foreclosure sale had already occurred.  *Id.*

Like the *Howl* defendants, Defendants here cite no authority supporting their contention that the tender rule applies in situations where a foreclosure sale is pending.  *See Karlsen*, 15 Cal. App. 3d at 121 (applying the tender rule in a situation where the borrower sought to *set aside* a voidable foreclosure sale); *U.S. Cold Storage*, *supra*, 165 Cal. App. 3d at 1222 (deciding whether to require a junior lienholder to offer tender before *setting aside* a concluded foreclosure sale); *Gaffney v. Downey Sav. & Loan Ass'n*, 200 Cal. App. 3d 1154, 1165 (1988) (discussing what constitutes an offer of perfect tender); *Nguyen v. Calhoun*, 105 Cal. App. 4th 428, 439 (2003) (discussing what constitutes a proper offer and acceptance of tender); *Alicea*, 2009 WL 2136969, at *3 (applying the tender rule in a situation where the sale had already occurred).  Like the *Howl* court, this Court finds Defendants' reliance on *Alicea* particularly misplaced.  Defendants thus fail to direct the Court to authority that properly supports their application of the tender rule to these facts.

Many courts justify applying the tender rule because "a court of equity will not order a useless act performed." *FPCI RE-HAB 01*, 207 Cal. App. 3d at 1021. These courts contend that, without tender, a plaintiff cannot redeem the property and so unwinding a completed foreclosure sale would be "useless." *Id.* at 1022. This Court does not believe, however, that *postponing* a sale when there are serious defects in a bank's compliance with California's comprehensive statutory foreclosure scheme is a "useless act."[6] The situation presented by a pending foreclosure is entirely different from one where the sale has already occurred. When the sale has occurred, unwinding it requires expending significant judicial resources because a bona fide purchaser has taken title; this process often involves third parties not present in a pending sale situation. When the sale is still pending, postponing it imposes only a modicum of delay, ensures that all of the legally required paperwork is in order, and still allows lenders to recover subject properties once they have shown that all of their documentation is proper. The concerns regarding 'unwinding' the sale are simply not present in a pending sale situation.

The burden on banks for complying with California's foreclosure statutes is low. That statutory framework is "exhaustive," containing a "myriad of rules" relating to proper notice and foreclosure procedures. *Moeller v. Lien*, 25 Cal. App. 4th 822, 834 (1994). While a review of this comprehensive framework evidences a "genuine concern by the Legislature to improve the opportunity for a trustor in default to receive actual notice of default and notice of sale," not even actual notice is required. *Lupertino v. Carbahal*, 35 Cal. App. 3d 742, 746 (1973). Instead, California asks only that lenders and trustees comply with certain procedural mandates reasonably calculated to inform those who might be affected by a foreclosure sale. *See id.* at 746-47. Quite simply, California does not ask for much from foreclosing parties. The practical effect of applying the tender rule in situations such as this is to obviate these already minimal statutory requirements whenever the debtor cannot offer full tender.

The Court does not believe it is useless to require lenders and trustees to comply with statutory requirements before foreclosing on all debtors, regardless of their financial situation. Improperly recorded notices, unsigned affidavits, and specious trustee substitutions cast a cloud of doubt over what otherwise may be a perfectly legitimate transaction. That uncertainty causes borrowers to question the legal authority of those attempting to foreclose, prompting lawsuits such as this, which consume vast amounts of judicial resources.[7] Further, unsophisticated and financially

---

[6]This is especially true in a situation such as this, where Plaintiffs claim they are "ready, willing, and able to resume any reasonable monthly payments to the owner of the note." Pls.' Opp'n to Defendants' Motion to Dismiss (Dkt. 9) at 18.

[7]The number of cases in California in which a borrower attacks a foreclosure action for irregularities in the sale process is not insignificant. *See*, *e.g.*, *Ngoc Nguyen*, *supra*, 749 F. Supp. 2d 1022; *Anaya v. Advisors Lending Grp.*, No. CV F 09-1191 LJO DLB, 2009 WL 2424037 (E.D. Cal. Aug. 5, 2009); *Gomez v. Wells Fargo Home Mortg.*, No. C 11-01725 LB, 2011 WL 5834949 (N.D. Cal. Nov. 21, 2011); *Rodriguez*, *supra*, 2011 WL 5864108; *Stickler*; *supra*, 2011 WL 4479200; *Barajas v. Countrywide Home

distressed borrowers confused by sale irregularities may bring these lawsuits *pro se* or under the guidance of less-than-scrupulous attorneys, unaware of statutory provisions that may make them liable for the lender's attorney's fees.[8]  Numerous other courts have recognized the confusion created by statutory non-compliance in assignment and recording procedures.  *See*, *e.g.*, *In re Foreclosure Cases*, 521 F. Supp. 2d 650, 654 (S.D. Ohio 2007) (giving foreclosing parties in 27 separate actions thirty days to present proper documentation before proceeding with judicial foreclosures); *In re Foreclosure Cases*, No. 1:07CV2282, et al., 2007 WL 3232430, at *3 n.3 (N.D. Ohio Oct. 31, 2007) ("There is no doubt every decision made by a financial institution in the foreclosure process is driven by money. And the legal work which flows from winning the financial institution's favor is highly lucrative. . . . [U]nchallenged by underfinanced opponents, the institutions worry less about [proper procedure] and more about maximizing returns."); *In re Obasi*, No. 10-10494 (SHL), 2011 WL 6336153, at *8 (Bankr. S.D.N.Y. Dec. 19, 2011) ("The country is in the midst of a foreclosure crisis, and the news is replete with examples of misleading, inaccurate or incomplete mortgage related pleadings that have been filed . . . . It is easy to find examples . . . of the problems caused by the filing of inadequate documentation related to mortgage obligations.").  Applying the tender rule to pending foreclosures would prevent any examination of irregularities in the foreclosure process, thus immunizing even deliberate disregard for statutory requirements.  If the tender rule is permitted to have such expansive effect, it will essentially deprive statutory notice procedures of all force.[9]

Accordingly, this Court declines to apply the tender rule at the pleading stage where Plaintiffs have alleged a facially plausible violation of California's foreclosure statutes resulting in confusion, apprehension, and unclear lines of legal authority with respect to Defendants' right to foreclose upon their home.

### B.   PLAINTIFFS' WRONGFUL FORECLOSURE CLAIM

Plaintiffs assert a wrongful foreclosure claim on three separate grounds: (1) neither BOA nor Recontrust own the Tangs' promissory note, so neither has the right to foreclose; (2) the Tangs' debt was satisfied and BOA lost any beneficial interest in Plaintiffs' mortgage when BOA securitized the note and sold it to third parties; and (3) documents effecting the foreclosure process were invalid

---

*Loans, Inc.*, No. CV 10-07961 DDP (AGRx), 2011 WL 2015576 (C.D. Cal. May 24, 2011); *Usher v. Greenpoint Mortg. Funding, Inc.*, No. CIV S-10-0952 LKK DAD PS, 2010 WL 4983468 (E.D. Cal. Dec. 2, 2010).

[8]In some cases foreclosing parties may be able to recover some of their attorney's fees for defending their right to foreclose upon an otherwise valid debt.  *See*, *e.g.*, Cal. Civ. Code §§ 2924c(c) & 2924d.

[9]*See Mabry v. Superior Court*, 185 Cal. App. 4th 208, 218 (2010) ("California courts, quite naturally, do not favor constructions of statutes that render them advisory only, or a dead letter.").

because they were improperly recorded and/or signed by "robo-signers" who lacked the requisite personal knowledge and/or authority to sign. Compl. ¶¶ 16-21, 26, 40. Defendants seek to dismiss these claims in their entirety.

### 1. DEFENDANTS NEED NOT OWN THE NOTE TO EXERCISE THE POWER OF SALE IN A DEED OF TRUST

California law does not require Defendants to hold the note in order to foreclose pursuant to the power of sale contained in a deed of trust. Section 2924(a)(1) allows "the trustee, mortgagee, or beneficiary, or any of their authorized agents" to initiate foreclosure proceedings. Cal. Civ. Code § 2924(a)(1). Thus, Section 2924 does not require that the foreclosing party retain a beneficial interest in the note; instead, it merely requires foreclosing parties to comply with certain statutory procedures. *See Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010) ("There is no stated requirement in California's non-judicial foreclosure scheme that requires a beneficial interest in the Note to foreclose. Rather, the statute broadly allows a trustee, mortgagee, beneficiary, or any of their agents to initiate non-judicial foreclosure. Accordingly, the statute does not require a beneficial interest in both the Note and the Deed of Trust to commence a non-judicial foreclosure sale."). Plaintiffs' claim that Defendants lack standing to foreclose because they do not possess Plaintiffs' promissory note is meritless and is therefore DISMISSED WITH PREJUDICE.

### 2. SECURITIZATION OF THE MORTGAGE DOES NOT AFFECT DEFENDANTS' POWER OF SALE

Plaintiffs' contention that the securitization of their mortgage somehow affects Defendants' rights to foreclose is likewise meritless. Plaintiffs have identified no authority supporting their position that securitization voids the power of sale contained in a deed of trust. Other courts have dismissed similar arguments. *See id.* (rejecting a similar securitization argument); *Benham v. Aurora Loan Services*, No. C-09-2059 SC, 2009 WL 2880232, at *3 (N.D. Cal. Sept. 1, 2009) ("Other courts in this district have summarily rejected the argument that companies like MERS lose their power of sale pursuant to the deed of trust when the original promissory note is assigned to a trust pool."). Thus, the claim that Defendants lack the authority to foreclose because the Tangs' mortgage was pooled into a security instrument is DISMISSED WITH PREJUDICE.

### 3. PLAINTIFFS PLAUSIBLY ALLEGE VIOLATIONS OF CALIFORNIA'S FORECLOSURE STATUTES

The Tangs do allege facially plausible violations of California's comprehensive foreclosure statutes governing proper notice and recordation procedures.[10] These violations stem from:

---

[10]While the Tangs do not cite specific statutory provisions, the conduct they allege indicates violations of several statutes. In accordance with the liberal reading of *pro se*

(1) improper recording and notice procedures; and (2) plausible allegations of robo-signing whereby persons executing documents lacked the requisite personal knowledge and/or agency relationship to do so. Compl. ¶¶ 18-19, 26-27, 40.

### i. IMPROPER NOTICE AND RECORDING

As noted above, Section 2924(a)(1) allows a trustee, mortgagee, beneficiary, or authorized agent to initiate non-judicial foreclosure proceedings pursuant to the power of sale contained in a deed of trust. Foreclosure proceedings are initiated by one of those four parties recording a notice of default. *See* Cal. Civ. Code § 2924(a)(1); *Moeller*, 25 Cal. App. 4th at 830 ("The foreclosure process is commenced by the recording of a Notice of Default and Election to Sell by the trustee."). A notice of default is invalid if not recorded by an entity that is the trustee, mortgagee, beneficiary, or authorized agent thereof. *See* Cal. Civ. Code § 2924(a)(1) (requiring that, in order to exercise the power of sale in a deed of trust, a notice of default must be recorded by one of the aforementioned parties); Cal. Civ. Code § 2932.5 ("The power of sale may be exercised by the assignee if the assignment is duly acknowledged *and recorded*.") (emphasis added)). The language in the Tangs' Deed of Trust tracks this requirement. *See* Compl. Ex. A ("Deed of Trust") at 13 ¶ 22 ("If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default . . . . *Trustee shall cause this notice to be recorded* . . . ." (emphasis added)). Thus, only certain parties – often the trustee – may initiate foreclosure proceedings.

Trustees may be substituted at the lender's discretion so long as the lender or beneficiary follows certain statutory procedures; namely, the substitution must be recorded. *See* Cal. Civ. Code § 2934a ("The trustee under a trust deed . . . may be substituted *by the recording* in the county in which the property is located of a substitution . . . ." (emphasis added)); Cal. Civ. Code § 2932.5. Again, the language in the Tangs' Deed of Trust tracks this statutory requirement. *See* Compl. Ex. A ("Deed of Trust") at 13 ¶ 24 (stating that the Lender may choose to substitute a trustee "by an instrument executed and acknowledged by Lender *and recorded* [in the appropriate county recorder's office]." (emphasis added)).

In the present case, both the Notice of Default and the Substitution of Trustee were executed on the same day – August 26, 2010. *See* Compl. Ex. C; Compl. Ex. E. The Notice of Default was recorded by Recontrust acting as the trustee on August 30, 2010. *See* Compl. Ex. C. This creates a problem because the Substitution of Trustee replacing PRLAP, Inc. with Recontrust was not recorded until ten days later, on September 9, 2010. *See* Compl. Ex. E. The Notice of Default was thus potentially defective because it was recorded by an entity not yet properly substituted as the trustee. *See* Cal. Civ. Code § 2934a (stating that a trustee is properly substituted "by the recording" of a substitution); Cal. Civ. Code § 2924(a)(1). Section 2934a(b) does, however, permit, under certain

---

pleadings, the Court construes these allegations as violations of the relevant statutory provisions.

circumstances, a notice of default to be executed concurrently with a substitution of trustee: "If the substitution is executed, but not recorded, prior to or concurrently with the recording of the notice of default, the beneficiary or beneficiaries or their authorized agents *shall cause notice of the substitution to be mailed prior to or concurrently with the recording thereof* . . . . An affidavit shall be attached to the substitution that notice has been given to those persons and in the manner required by this subdivision." Cal. Civ. Code § 2934a(b) (emphasis added); *see also Atienza v. Wells Fargo Bank, N.A.*, No. C 10-03457 RS, 2011 WL 11507, at *3 (N.D. Cal. Jan. 4, 2011) ("[S]ection 2934a(b) provides that if the substitution is executed prior to or concurrently with the recording of a [notice of default], then notice of the substitution *must* be mailed *on or before that recordation date*." (emphasis added). Plaintiffs' complaint and supporting documents clearly show a violation of Section 2934a that resulted in improper notice.

      Here, the Notice of Default and the Substitution of Trustee were executed on the same day, so Defendants were required to comply with Section 2934a(b). Compliance with Section 2934a(b) in this case required sending Plaintiffs a Notice of Substitution of Trustee on or before the date the Notice of Default was recorded – August 30, 2010 – with a copy of the Substitution of Trustee attached, along with an affidavit stating that the proper notice procedures had been followed. *See* Cal. Civ. Code § 2934a(b).

      The Notice of Substitution of Trustee was defective first because it was untimely. Due to the concurrent execution of the Substitution of Trustee and the Notice of Default and Defendants' subsequent failure to record the Substitution of Trustee before recording the Notice of Default, Defendants were required to send a Notice of Substitution of Trustee prior to or concurrently with the recordation of the Notice of Default on August 30, 2010. The unsigned affidavit attached to the Notice of Substitution of Trustee indicates that it was not mailed until December 3, 2010 – more than three months after the Notice of Default was recorded. This is in clear violation of Section 2934a(b).[11]

---

[11] Some courts have interpreted Section 2934a(b) as requiring the Notice of Substitution of Trustee to be mailed prior to recording the Notice of Sale, as opposed to prior to recording the Notice of Default. *See Magdaleno v. Indymac Bancorp, Inc.*, No. S-10-2148 FCD/KJN, 2011 WL 338493, at *6 (E.D. Cal. Jan. 31, 2011). The Court believes that cases such as these are relying on a now-defunct version of Section 2934a(b). Section 2934a(b) was amended by statute in 2004 to its present form; the amendment took effect January 1, 2005. *See* S.B. 1277, 2004 Cal. Legis. Serv. Ch. 177 (West) (amending Section 2934a(b) to apply to situations where the Substitution of Trustee is executed *concurrently* with the Notice of Default as opposed to, under the old statute, situations where the Substitution of Trustee was executed *after* the Notice of Default). The *Magdaleno* court's interpretation of Section 2934a(b) is contradicted by the plain language of the statute. Even if its holding regarding timeliness is valid, which this Court doubts, the Notice of Substitution of Trustee was still deficient in that it contained an unsigned affidavit and did not contain a correct copy of the Substitution of Trustee.

The Notice of Substitution of Trustee was also defective because the accompanying affidavit was unsigned. *See Mason v. Clark*, 920 F.2d 493, 495 (8th Cir. 1990) (noting that an "'unsigned affidavit' is a contradiction in terms"); Cal. Code Civ. Proc. § 2003. As an unsworn statement, the unsigned affidavit does not meet the requirement in Section 2934a(b) that the Notice of Substitution of Trustee be accompanied by an affidavit attesting that the statutory notice provisions were correctly followed.

Finally, the Notice of Substitution of Trustee was defective because the Substitution of Trustee that was attached to it was simply not a copy of the actual Substitution of Trustee that was recorded on September 9, 2010. Section 2934a(b) requires that a Notice of Substitution of Trustee include notice of the actual substitution. *See* Cal. Civ. Code § 2934a(b) (stating that the beneficiary or their authorized agent "shall cause notice of the substitution to be mailed . . . ."). Indeed, the document attached to the Notice of Substitution of Trustee purporting to be that substitution states: "The original of this document has concurrently been sent for recording with the County Recorder." Compl. Ex. L. However, the document attached to the Notice of Substitution of Trustee is not a copy of the original Substitution of Trustee that was recorded on September 9, 2010, under which Recontrust asserts the power of sale. The alleged copy does not indicate that the Substitution of Trustee was recorded or notarized, is not signed by T. Sevillano or any other agent on behalf of BOA, and indicates a space for a different notary public – Darlene R. Gomez, as opposed to Michelle Miller – to sign. *Compare* Compl. Ex. E ("Substitution of Trustee") *with* Compl. Ex. L ("Notice of Substitution of Trustee"). The attached document is clearly different from the previously recorded Substitution of Trustee. Thus, the Notice of Substitution of Trustee was deficient with respect to Section 2934a(b) because it did not actually provide a copy of the Substitution of Trustee it purported to notice.

Notably, Defendants address neither the timing issues raised by Plaintiffs, nor their concerns regarding the Notice of Substitution of Trustee. *See* Compl. ¶¶ 18, 40 (raising issues relating to the timing of the Notice of Default and discrepancies between the Substitution of Trustee and the Notice of Substitution of Trustee). Instead, Defendants simply assert that, because Recontrust was substituted as the trustee on September 9, 2010, all actions taken by Recontrust were valid. Mot. at 4. This argument is plainly insufficient because Defendants do not address the very heart of Plaintiffs' statutory complaints: because the Substitution of Trustee was recorded after the Notice of Default, and because Defendants then failed to comply with the appropriate notice requirements in Section 2934a(b), the original Notice of Default was invalid as it was not recorded by a trustee, beneficiary, mortgagee, or other authorized agent. On a motion to dismiss it is Defendants' burden to show that Plaintiffs cannot state a claim for relief. *See David v. Baker*, 129 Fed. App'x 358, 360 (9th. Cir. 2005) (noting that in a Rule 12(b)(6) motion, defendants must satisfy their burden of rebutting plaintiffs' allegations taken as true). A complete failure to address Plaintiffs' primary argument and the conclusory statement that all actions taken by Recontrust were valid does not meet this burden. Accordingly, Defendants' Motion to Dismiss Plaintiffs' wrongful foreclosure claim stemming from violations of California's comprehensive statutory framework is DENIED.

      **ii.**      **IMPROPER SUBSTITUTION OF TRUSTEE DUE TO**

### THE LACK OF AN AGENCY RELATIONSHIP

Plaintiffs allege that the Substitution of Trustee was invalid because the person executing it on behalf of BOA, T. Sevillano, was a "robo-signer" who lacked the requisite agency relationship.[12] Compl. ¶ 19. Section 2934a requires that, in order for a trustee to be substituted, the beneficiary or the beneficiary's agent must record the substitution. Cal. Civ. Code § 2934a(a). As noted above, Section 2924 requires that a notice of default be recorded by the mortgagee, trustee, beneficiary, or authorized agent thereof. Cal. Civ. Code § 2924(a)(1); *see also* Cal. Civ. Code § 2932.5. If Sevillano lacked an agency relationship with BOA when he executed the Substitution of Trustee, the Substitution of Trustee was invalid, such that Recontrust was not one of the four parties authorized by Section 2924 to record a Notice of Default. Thus, if Sevillano had no agency relationship with BOA, all subsequent actions taken by Recontrust as the trustee are invalid. In support of their allegations of "robo-signing," Plaintiffs have submitted documents that show Sevillano acting as an agent of MERS only a few months before acting as an agent for BOA. Compl. Ex. H. In order for the Substitution of Trustee to have been validly executed by Sevillano as an agent of BOA, (1) Sevillano must have changed employment between March and August 2010, (2) Sevillano must be an agent for both BOA and MERS, or (3) MERS itself must be an agent of BOA. The Court presently has no information to suggest that one of these possibilities is true; the relationship between MERS, BOA, and Sevillano in August 2010 remains unclear. The Court thus finds Plaintiffs' allegations of robo-signing plausible to proceed.

Aside from the very documents whose legitimacy is reasonably questioned by Plaintiffs, Defendants submit no judicially noticeable documents showing that Sevillano was indeed an agent for BOA and not MERS. Notably, Defendants choose to address Plaintiffs' robo-signing allegations in a footnote, claiming simply that the allegations of robo-signing are inapplicable because Sevillano did not need personal knowledge to sign the Substitution of Trustee. Mot. at 4 n.1. This argument fails because Plaintiffs do not rely on Sevillano's personal knowledge in making their robo-signing claim; they have directly attacked the agency relationship itself by averring that Sevillano "has no authority"

---

[12]Plaintiffs' Exhibit I calls into question the agency relationship between Lisa Allinson and BOA by showing Allinson previously acting as an agent of MERS. However, the only document signed by Allinson before the Court is Plaintiffs' Exhibit G, the "2923.54 Exemption." The statutory mandates requiring the "2923.54 Exemption" have since been repealed. *See* Stats. 2009-2010, 2nd Ex. Sess., ch. 5 (A.B.7), § 3. Further, while this does perhaps evidence a pattern of using robo-signers BOA's part, Plaintiffs do not have a private right of action to assert violations of Section 2923.54. *See Vuki v. Superior Court*, 189 Cal. App. 4th 791, 798-99 (2010) (holding that because of the extensive regulatory structure embodied in Sections 2923.52, 2923.53, and 2923.54, the legislature intended to leave enforcement of those sections to regulatory agencies and not individuals). Therefore, Plaintiffs' claims of robo-signing by Allinson are DISMISSED WITH PREJUDICE.

to sign the Substitution of Trustee. Compl. ¶ 19. Simply stating, as Defendants do, that "[a]s an agent to Bank of America and as the named Trustee, T. Serillano [sic] was and is authorized to assign the deed of trust" does nothing to defeat Plaintiffs' claims when that very agency relationship is the basis of Plaintiffs' challenge. Mot. at 4. The Court believes that it would benefit from the minimal discovery necessary to prove the agency relationship between BOA, MERS, and Sevillano during the relevant portions of 2010, perhaps with a deposition of Sevillano. Thus, because Plaintiffs have made a facially plausible claim that Sevillano was not an agent of BOA and did not have authority to substitute Reconstrust as the trustee, the Court DENIES Defendants' Motion to Dismiss Plaintiffs' wrongful foreclosure claim stemming from allegations of robo-signing.

### C. PLAINTIFFS' SECTION 2923.5 CLAIM

Plaintiffs assert a violation of Section 2923.5, claiming that the "California Declaration" attached to the Notice of Default was deficient.[13] Compl. ¶ 26-27. Section 2923.5 requires that, at least 30 days prior to filing a notice of default, lenders must first contact borrowers and explore foreclosure alternatives that would keep borrowers in their homes. *See* Cal. Civ. Code § 2923.5(a). To demonstrate compliance with this Section, lenders filing a notice of default must attach a declaration stating that the lender either contacted the borrower or that the lender tried with due diligence to contact the borrower. *See* Cal. Civ. Code § 2923.5(b). Section 2923.5 extensively details the definition of "due diligence" in this context: lenders must first send borrowers a letter, then try calling at least three times on different days at different hours, and then send a certified letter with a return receipt; lenders must also have a toll-free number providing access to a live representative as well as a "prominent" link on their webpage linking borrowers to pertinent information. *See* Cal. Civ. Code § 2923.5(g).

Plaintiffs have not pled sufficient facts to show that the "California Declaration" signed by Michael Link on behalf of BOA was insufficient. Plaintiffs merely state that the "California Declaration" did not meet the requirements of Section 2923.5, yet fail to state *how* the California Declaration was deficient. Compl. ¶ 27. Plaintiffs have submitted documents calling into question the agency relationship between BOA, MERS, Sevillano, and Allinson, but Plaintiffs submit no evidence calling into question Link's agency relationship, nor do they allege that Link was a robo-signer. Plaintiffs may be attempting to show that BOA and Link never conducted the "due diligence" required by Section 2923.5; if so, Plaintiffs have failed to state sufficient facts. *See* Pls.' Opp'n to Defendants' Motion to Dismiss (Dkt. 9) at 13 ("[Section] 2923.5 requires contact with the borrower, not form language stapled to a form."). Accordingly, Plaintiffs' Section 2923.5 claim is DISMISSED WITHOUT PREJUDICE.

---

[13]Plaintiffs also assert that Lisa Allinson was a robo-signer who lacked the requisite authority and/or knowledge to sign the "2923.54 Exemption." First, that claim is properly for a violation of Section 2923.54, not Section 2923.5. Second, as noted above, there is not private right of action to assert violations of Sections 2923.52, 2923.53, and 2923.54. *See Vuki*, 189 Cal. App. 4th at 798-99.

### D. PLAINTIFFS' UNJUST ENRICHMENT CLAIM

Plaintiffs bring an unjust enrichment claim on the theory that their payments to BOA were unjust because BOA had no interest in their mortgage, or because their mortgage was fully paid off when BOA securitized their mortgage. California courts are divided as to whether unjust enrichment is a proper cause of action or merely a general principle underlying certain legal doctrines and remedies. Some have held that there is no cause of action for unjust enrichment. *Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (2003). Others permit unjust enrichment claims where there is "the receipt of a benefit and the unjust retention of the benefit at the expense of another." *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008). To prove that receipt was unjust, it usually must be shown that "the benefits were conferred by mistake, fraud, coercion or request; otherwise, though there is enrichment, it is not unjust." *Dinosaur Development, Inc. v. White*, 216 Cal. App. 3d 1310, 1316 (1989) (citations omitted).

Defendants seek to dismiss Plaintiffs' unjust enrichment claim on the grounds that unjust enrichment is not a cause of action. Mot. at 6. This Court need not address whether there is a cause of action for unjust enrichment because the Court finds that Plaintiffs have not pled sufficient facts to state an unjust enrichment claim. Plaintiffs have not shown how the payments to BOA were "unjust." As noted above, their securitization argument is without merit. *See Lane*, *supra*, 713 F. Supp. 2d at 1099; *Benham*, *supra*, 2009 WL 2880232, at *3. BOA is clearly identified on Plaintiffs' Deed of Trust as the lender and beneficiary. Plaintiffs have not shown how payments to BOA – for a mortgage in excess of $300,000 – were unjust when those very payments allowed the Tangs to stay in their home. Plaintiffs have not challenged the underlying validity of that debt. Therefore, because Plaintiffs cannot show that payments to BOA were unjust, their unjust enrichment claim is DISMISSED WITH PREJUDICE.

### E. PLAINTIFFS' RESPA AND TILA CLAIMS

Plaintiffs assert violations of both RESPA and TILA. Though Plaintiffs assert these claims together, the Court separates them for ease of discussion.

#### 1. PLAINTIFFS' RESPA CLAIM FAILS

Plaintiffs claim that BOA violated RESPA when it failed to respond to a qualified written request ("QWR"). Compl. ¶¶ 33-34. RESPA allows borrowers who believe their account is in error to send their loan servicer a QWR requesting information relating to the servicing of their mortgage. *See* 12 U.S.C. § 2605(e). Failure to respond to a QWR subjects loan servicers to liability for an individual borrower's actual damages. *See* 12 U.S.C. § 2605(f).

Defendants seek to dismiss the Tangs' RESPA claim because Recontrust responded to Plaintiffs' QWR and because Plaintiffs have not pled any damages as a result of BOA's alleged failure to respond. Mot. at 6-7. The Court agrees. Plaintiffs' own exhibits show that Recontrust substantially responded to the Tangs' QWR. *See* Compl. Ex. K ("QWR Response"). Recontrust's QWR Response

provided the Tangs with copies of relevant documents, payment history, payoff calculation, and information regarding how to contact Recontrust for work out options. *Compare* Compl. Ex. J ("QWR") *with* Compl. Ex. K ("QWR Response"). Further, a conclusory recitation that they have been damaged as a result of this alleged failure to respond is not sufficient to show actual damages. *See Twombly*, *supra*, 550 U.S. at 555 (conclusory labels and recitations do not show entitlement for relief); Compl. ¶ 35 (conclusorily stating how Plaintiffs have been damaged). Therefore, Plaintiffs' RESPA claim is DISMISSED WITH PREJUDICE.

### 2. PLAINTIFFS' TILA CLAIMS FAIL

Plaintiffs assert that Defendants have violated TILA. Compl. ¶ 34. However, as Defendants point out, Plaintiffs have failed to show *how* Defendants violated TILA. Mot. at 7. Instead, Plaintiffs merely assert that Defendants have tried to conceal TILA violations. Compl. ¶ 34. Accordingly, because Plaintiffs have not submitted any facts nor advanced any theories as to how TILA was violated, the Tangs' TILA claim is DISMISSED WITHOUT PREJUDICE.

### F. PLAINTIFFS' FRAUD AND CONCEALMENT CLAIM

The Court construes Plaintiffs' fraud claims as alleging two major arguments. First, Plaintiffs allege that prior to consummating the loan, Defendants concealed the material fact that the Tangs' mortgage would be securitized, among other unspecified facts. Compl. ¶ 37. Second, Plaintiffs aver that Defendants are concealing information requested by the Tangs in their QWR.[14] Compl. ¶¶ 38-42. Defendants seek to dismiss Plaintiffs' fraud and concealment theories on the grounds that Plaintiffs have not pled fraud with the specificity required by Rule 9(b). Mot. at 8. Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id.* This particularity requirement "includ[es] 'the who, what, when, where, and how of the misconduct charged.'" *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). The heightened pleading standard ensures that defendants charged with inducing a mistake or fraud can have specific enough notice to defend against the alleged misconduct instead of simply denying they have done anything wrong. *See Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). A plaintiff thus must show why a complained-of statement or omission was false or misleading. *Cundiff v. Dollar Loan Center LLC*, 726 F. Supp. 2d 1232, 1241 (D. Nev. 2010) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994). Rule 9(b)'s particularity requirement applies to state-law causes of action. *See Vess*, 317 F.3d at 1103.

---

[14]As noted above, the Tangs' *pro se* complaint is often difficult to decipher due to extensive grammatical errors. This is most especially true for their fraud and concealment claims, some of which allege conduct evidencing statutory violations instead of fraud. *See*, *e.g.*, Compl. ¶ 40. The Court construes Plaintiffs' arguments to the best of its ability.

The Court agrees with Defendants' Rule 9(b) argument with respect to both of Plaintiffs' fraud theories. Plaintiffs have not alleged specific representations that were false or misleading, they do not identify the speaker of such misrepresentations, and they have not alleged how the possible securitization of their mortgage was a material fact nor how that eventual securitization damaged them. Likewise, for the same reasons, plaintiffs have not pled their QWR concealment theory with the requisite specificity. And as noted above, the Court finds that Defendants substantially complied with Plaintiffs' QWR. Rule 9(b) requires that fraud be pled "with a high degree of meticulousness." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000). Plaintiffs have not met that high standard; they allege none of the specific facts Rule 9(b) requires. *See Ebeid*, 616 F.3d at 998. Accordingly, Plaintiffs' fraud and concealment claims are DISMISSED WITH PREJUDICE.

### G. PLAINTIFFS' QUIET TITLE CLAIM

Plaintiffs seek to quiet title in their home. Compl. ¶ 44. "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *See Shimpones v. Stickney*, 219 Cal. 637, 649 (1934); *Aguilar v. Bocci*, 39 Cal. App. 3d 475, 477 (1974); *Briosos v. Wells Fargo Bank*, 737 F. Supp. 2d 1018, 1032 (N.D. Cal. 2010). A plaintiff seeking to quiet title must also establish an interest in the property that is adverse to his or her own. *See Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1206 (S.D. Cal. 2010) (listing requirements for a quiet title action); Cal. Code Civ. Proc. § 760.020. A security interest in a deed of trust is not an adverse claim to a plaintiff's property. *See Vega v. JPMorgan Chase Bank, N.A.*, 654 F. Supp. 2d 1104, 1121 (E.D. Cal. 2009) (dismissing a quiet title action where "defendants have held a security interest in the [deed of trust], not an adverse claim in the property."); *MacLeod v. Moran*, 153 Cal. 97, 99-100 (1908) (holding that a trustee's interest in a deed of trust "carries none of the incidents of ownership of the property, other than the right to convey upon default on the part of the debtor in the payment of his debt.").

Defendants seek to dismiss Plaintiffs' quiet title action on two grounds: (1) Plaintiffs have not alleged tender; and (2) Plaintiffs have not established an adverse claim to their home. Mot. at 9. The Court agrees. The situation presented by a quiet title action is different from an action seeking postponement of the foreclosure sale due to statutory violations, discussed above, where this Court has chosen not to apply the tender rule. As evidenced by the *Shimpones*, 219 Cal. at 649, and *Aguilar*, 39 Cal. App. 3d at 477, decisions, failure to offer tender at the pleading stage in a quiet title action is fatal. Further, because Defendants' only interest in the property is a security interest evidenced by the Deed of Trust, Plaintiffs have failed to show an adverse claim to their home. *See Mehta*, 737 F. Supp. 2d at 1206; *Vega*, 654 F. Supp. 2d at 1121. Therefore, Plaintiffs' quiet title action is DISMISSED WITH PREJUDICE.

### H. PLAINTIFFS' DECLARATORY AND INJUNCTIVE RELIEF CLAIMS

Plaintiffs assert a cause of action for "Declaratory and Injunctive Relief." Compl. at 13. Though Plaintiffs assert these causes of action together, the Court separates them for ease of discussion.

1.      **DECLARATORY RELIEF**

Plaintiffs seek "a judicial determination of their rights and duties as to the validity of the Promissory Note and [Deed of Trust], and Defendants' rights to proceed with non-judicial foreclosure on the Property." Compl. ¶ 50. Any person party to a written instrument who desires a declaration of his or her rights and duties under the instrument can bring an action for declaratory relief so long as an actual controversy exists. Cal. Code. Civ. Proc. § 1060. A Court has discretion not to issue declaratory relief when "its declaration or determination is not necessary or proper at the time under all the circumstances." Cal. Code. Civ. Proc. § 1061. In order to plead declaratory relief, a plaintiff must show "a real and substantial controversy admitting of specific relief through a decree of a conclusive character." *Alameda Cnty. Land Use Ass'n v. City of Haywayrd*, 38 Cal. App. 4th 1716, 1722 (1995). A controversy is "ripe" for declaratory relief "when it has reached, but has not passed, the point that the facts have sufficiently congealed to permit an intelligent and useful decision to be made." *Cal. Water & Tel. Co. v. Los Angeles Cnty.*, 253 Cal. App. 2d 16, 22 (1967). "The declaratory relief statute should not be used for the purpose of anticipating and determining an issue which can be determined in the main action." *Gen. of Am. Ins. Co. v. Lilly*, 258 Cal. App. 2d 465, 470 (1968). "The availability of another form of relief that is adequate will usually justify refusal to grant declaratory relief." *Cal. Ins. Guar. Ass'n v. Superior Court*, 231 Cal. App. 3d 1617, 1624 (1991).

Defendants seek to dismiss Plaintiffs' declaratory relief action on two grounds: (1) Plaintiffs have not shown an actual controversy exists; and (2) declaratory relief is unwarranted because there are other adequate forms of relief available to Plaintiffs. Mot. at 10. Defendants concede that their first theory is contingent upon dismissal of all of Plaintiffs' claims. *See id.* ("Whether Plaintiffs can maintain their claim for declaratory relief depends on whether they . . . properly plead any of their alleged claims . . . ."). As not all of Plaintiffs' claims have been dismissed, Defendants' first theory fails. However, the Court agrees that the availability of other forms of relief makes the issuance of declaratory relief unnecessary. *See Cal. Ins. Guar. Ass'n*, 231 Cal. App. 3d at 1623 ("Generally, an action in declaratory relief will not lie to determine an issue which can be determined in the underlying tort action."). Here, the issues before the Court – namely the allegations of statutory non-compliance and robo-signing contained in Plaintiffs' wrongful foreclosure claim – can be adequately determined by adjudicating that claim. The relief that may potentially be afforded by that claim – a postponement of the foreclosure sale – is adequate enough to justify a refusal of declaratory relief. A separate cause of action for declaratory relief is thus unwarranted. Therefore, the Court finds declaratory relief unnecessary and chooses to exercise the discretion afforded it by California Code of Civil Procedure Section 1601. Plaintiffs' declaratory relief action is DISMISSED WITH PREJUDICE.

2.      **INJUNCTIVE RELIEF**

Plaintiffs assert a "cause of action" for injunctive relief. Compl. ¶¶ 53-54. As Defendants correctly point out, injunctive relief is a remedy, not a cause of action. *See*, *e.g.*; *Marlin v. Aimco Venezia, LLC*, 154 Cal. App. 4th 154, 162 (2007) ("An injunction is a remedy, not a cause of action."); *Roberts v. Los Angeles Cnty. Bar Ass'n*, 105 Cal. App. 4th 604, 618 (2003); *Ayala v. Bank of*

*America,* No. 09CV1946, 2010 WL 1568577, at *4 (S.D. Cal. Apr. 16, 2010). Therefore, Plaintiffs' "cause of action" for injunctive relief is DISMISSED WITH PREJUDICE.

### I. PLAINTIFFS' SLANDER OF TITLE CLAIM

Plaintiffs assert a slander of title claim, alleging that Defendants caused the publication of "matters which were untrue and disparaging to Plaintiffs' right to title in the subject property." Compl. ¶ 56. The elements required to plead slander of title are: (1) publication; (2) absence of justification; (3) falsity; and (4) direct pecuniary loss. *Seeley v. Seymour*, 190 Cal. App. 3d 844, 858 (1987).

Defendants seek to dismiss Plaintiffs' slander of title action on the grounds that Plaintiffs have not properly pled the claim. Mot. at 11. The Court agrees. Plaintiffs have not alleged which publications caused the alleged slander, have not shown that their underlying debt was invalid nor do they dispute defaulting on that debt, have not identified any falsities contained in any publications made by Defendants, and have not alleged direct pecuniary loss as a result of the slander of title. Therefore, Plaintiffs' slander of title claim is DISMISSED WITH PREJUDICE.

### J. PLAINTIFFS' INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

Plaintiffs bring an intentional infliction of emotional distress ("IIED") claim, asserting that Defendants engaged in extreme and outrageous behavior with reckless disregard; Plaintiffs claim $1,000,000 in emotional distress damages. Compl. ¶¶ 61-63. The elements of an IIED claim are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Quinteros v. Aurora Loan Services*, 740 F. Supp. 2d 1163, 1172 (E.D. Cal. 2010) (quoting *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991)).

Defendants seek to dismiss Plaintiffs' IIED claim on the grounds that they have not alleged any specific facts supporting the allegation. Mot. at 12. The Court agrees. Plaintiffs have not shown what exactly they claim to be Defendants' "extreme and outrageous conduct," they have not shown how that conduct caused them to suffer emotional distress to the tune of $1,000,000, and they have not offered facts showing causation. Conclusory allegations are not entitled to the presumption of truth. *Iqbal*, *supra*, 129 S.Ct. at 1950. Therefore, Plaintiffs' IIED claim is DISMISSED WITH PREJUDICE.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss. Plaintiffs' wrongful foreclosure claims stemming from allegations that Defendants

do not own their promissory note or that securitization of their mortgage affected Defendants' rights to foreclose are DISMISSED WITH PREJUDICE. Likewise, Plaintiffs' claims for unjust enrichment, RESPA violations, fraud and concealment, quiet title, declaratory relief, slander of title, IIED, and their "cause of action" for injunctive relief are also DISMISSED WITH PREJUDICE. Plaintiffs' claims for violations of Section 2923.5 and TILA are DISMISSED WITHOUT PREJUDICE. With respect to Plaintiffs' wrongful foreclosure claims stemming from allegations of robo-signing and statutory violations, Defendants' Motion to Dismiss is DENIED.

    Any amended complaint shall be filed no later than April 6, 2012.

    The Clerk shall serve this minute order on all parties to the action.